# In the United States District Court for the Southern District of Georgia Waycross Division

PROGRESSIVE MOUNTAIN INSURANCE COMPANY,

    Petitioner,

v.

RICKY MCCALLISTER, NIKKI MCCALISTERR, CYNTHIA EVANS, MARVIN PLATT, DANIEL TURNER, EASTER SEALS OF SOUTHERN GEORGIA, INC., DEBORAH BARNARD, and JACK WILLIAMS,

    Respondents.

No. 5:16-cv-93

## ORDER

This matter comes before the Court on Petitioner Progressive Mountain Insurance Company's ("Progressive") Motion for Summary Judgment. Dkt. No. 44. Respondents failed to respond. (And the deadline to do so has passed.) This Motion is ripe for review. For the following reasons, this Motion is **GRANTED**.

## BACKGROUND FACTS

Respondent Ricky McCallister had a vehicle collision on March 2, 2016 ("the collision"). Progressive had previously issued him an automobile insurance policy ("the Policy"). Dkt.

No. 44-3. This case presents the question of Progressive's insurance obligation to McCallister.

I. The Collision

Ricky McCallister ("McCallister") was doing subcontract work for Pierce County Auto as a mechanic on March 2, 2016. Dkt. No. 44-4 12:12-13:8; 15:14-18. McCallister performed the work through his business, Best Bet Auto Repair ("Best Bet"). Id. 18:18-25; 19:11-22. The arrangement was as follows: if Pierce County Auto ("the repair shop") needed a vehicle repaired, McCallister would repair it, and Pierce County Auto would make payment to Best Bet. Id. 19:11-22.

Pursuant to this arrangement, McCallister was assigned the job of repairing Respondent Jack Williams' 1997 Camaro Z28 ("the Camaro"). Id. 24:2-6. Several months before the subject accident, the Camaro was brought into the repair shop so the engine could be rebuilt, and the job was assigned to McCallister. Id. 24:18-25; 25:1-8. After McCallister finished rebuilding the engine but while it still remained at the repair shop, the engine started leaking oil. Id. 24:14-20; 25:13-18; 32:3-9. On March 2, 2016, McCallister performed more engine repairs, planning to repair and reseal the engine and take it for a test drive. Id. Mr. McCallister's wife, Nikki McCallister, arrived at the repair shop that same day to go to lunch with her husband. Id. 27:16-25. So that he could give

the Camaro a test drive, Mr. McCallister decided to drive it to lunch. Id. Specifically, he testified that he test drove the Camaro to lunch in order "to make sure it wasn't going to leak." Id. 27:21-22.

While test driving the car to lunch with his wife, McCallister caused a collision with the rear of a Ford E-350 Super Duty, driven by Respondent Cynthia Evans and owned by Respondent Easter Seals of Southern Georgia. Dkt. No. 44-5; Dkt. Nos. 1/5 ¶¶ 17-18. The initial collision caused the Camaro to leave the roadway, travel through a ditch, and collide with an unoccupied vehicle, a 2008 Dodge Avenger owned by Respondent Deborah Barnard, that was parked in a private driveway. Dkt. No. 44-5.

Progressive filed the present action on October 12, 2016, seeking a declaration from the Court regarding its duty to provide coverage, medical payments, indemnification, or a defense for the bodily injury and property damage claims related to the March 2, 2016 collision. Dkt. No. 1.

II. The Policy

The Policy provides insurance coverage for liability to others, collision, and medical payments coverage. The liability coverage includes "damages for bodily injury and property damage for which an insured person becomes legally responsible because of an accident." Dkt. No. 44-3, p. 3. The medical payments

coverage includes "the reasonable expenses incurred for necessary medical services received within three years from the date of a motor vehicle accident because of bodily injury." Id., p. 7. The collision coverage includes sudden, direct, and accidental loss to a covered auto or a "non-owned auto" defined as an "auto that is not owned by or furnished or available for the regular use of you, a relative, or a rated resident while in the custody of or being operated by you, a relative, or a rated resident with the permission of the owner of the auto or the person in lawful possession of the auto." Id., p. 17, 20.

All three types of coverage have an auto business exclusion. Specifically, the liability coverage excludes from coverage "bodily injury or property damage arising out of an accident involving any vehicle while being maintained or used by a person while employed or engaged in any auto business. This exclusion does not apply to you . . . when using a covered auto." Id., p. 4. The medical payment coverage has the exact same exclusion—that is, it does not apply to "bodily injury arising out of an accident involving a vehicle while being maintained or used by a person while employed or engaged in any auto business. This exclusion does not apply to you . . . when using a covered auto." Id., p. 8. The collision coverage has a similar exclusion. It does not apply for loss "to a non-owned auto while being maintained or used by a person while employed

or engaged in any auto business." Id., p. 17. (It does not have the additional language limiting the exclusion shared by the liability and medical payments exclusions for auto business.) All three define "auto business" to mean the business of selling, leasing, repairing, parking, storing, servicing, delivering or testing vehicles. Id., p. 1.

**LEGAL STANDARD**

Summary judgment is required where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. In making this determination, the court is to view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Johnson v. Booker T. Washington Broad. Serv., Inc., 234 F.3d 501, 507 (11th Cir. 2000).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The movant must show the

AO 72A
(Rev. 8/82)

court that there is an absence of evidence to support the nonmoving party's case. Id. at 325. If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. Anderson, 477 U.S. at 257.

The nonmovant may satisfy this burden in one of two ways. First, the nonmovant "may show that the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion, which was 'overlooked or ignored' by the moving party, who has thus failed to meet the initial burden of showing an absence of evidence." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993) (quoting Celotex Corp., 477 U.S. at 332 (Brennan, J., dissenting)). Second, the nonmovant "may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1117. Where the nonmovant attempts to carry this burden instead with nothing more "than a repetition of his conclusional allegations, summary judgment for the defendants [is] not only proper but required." Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981) (citing Fed. R. Civ. P. 56(e)).

AO 72A
(Rev. 8/82)

## DISCUSSION

This case presents the question of whether an exclusion in an automobile insurance policy applies. Interpretation of an insurance contract is a question of law. Claussen v. Aetna Cas. & Sur. Co., 380 S.E.2d 686, 687 (Ga. 1989) (citing O.C.G.A. § 13-2-1). Insurance policies are a "matter of contract[,] and the parties to the contract of insurance are bound by its plain and unambiguous terms." Hurst v. Grange Mut. Cas. Co., 470 S.E.2d 659, 663 (Ga. 1996). "[T]he policy 'should be read as a layman would read it and not as it might be analyzed by an insurance expert or an attorney.'" Ga. Farm Bureau Mut. Ins. Co. v. Smith, 784 S.E.2d 422, 424 (2016) (quoting State Farm Mut. Auto. Ins. Co. v. Staton, 685 S.E.2d 263 (Ga. 2009)). "Where the terms are clear and unambiguous, and capable of only one reasonable interpretation, the court is to look to the contract alone to ascertain the parties' intent." Lavoi Corp., Inc. v. Nat'l Fire Ins. of Hartford, 666 S.E.2d 387, 391 (Ga. Ct. App. 2008) (quoting Fireman's Fund Ins. Co. v. Univ. of Ga. Athletic Ass'n, 654 S.E.2d 207 (Ga. Ct. App. 2007)). And "courts 'will not strain a contract to extend coverage where none was intended.'" Lavoi, 666 S.E.2d at 391 (quoting Jefferson Ins. Co. v. Dunn, 496 S.E.2d 696 (Ga. 1998)).

Here, the Policy is between Progressive and the McCallisters. It covers damages for bodily injury and property

damage for which the McCallisters become legally responsible because of an accident, medical expenses incurred from a motor vehicle accident, and collisions that arise from sudden, direct, and accidental loss. But the liability, medical payments, and collision coverages each excludes coverage for damage arising out of an accident involving a vehicle while being maintained or used by a person while employed or engaged in any auto business.

The first question: did the accident involve a vehicle "while being maintained or used by a person while employed or engaged in any auto business?" The undisputed answer: yes. Here, McCallister had possession of the Camaro because its owner (Jack Williams) had taken it to the repair shop to be repaired, and the shop had assigned the job to McCallister, as part of his employment with Best Bet. Through Best Bet, McCallister did contract work as a mechanic for Pierce County Auto. He did so for the Camaro. On the day of the accident, the Camaro had an oil leak that needed attention. McCallister made further repairs and decided to test drive the Camaro. He testified that he test drove the Camaro while driving his wife to lunch. He did so "to make sure it wasn't going to leak." Dkt. No. 44-3 27:21-22.

There is no question that McCallister was engaged in an auto business. He was employed by Best Bet as a mechanic and

contracted with Pierce County Auto to repair the very car in question. He was also engaged in an auto business at the time of the accident. Test driving is explicitly part of the auto business, as the Policy defines "auto business" to mean "the business of selling, leasing, repairing, parking, storing, servicing, delivering or <u>testing vehicle</u>." (emphasis added)

Consistent with these conclusions, Georgia courts in interpreting auto business exclusions that apply when used by a person while engaged in an autobusiness instruct attention to the question of "in whose charge the vehicle was at the time of the collision." <u>Smith v. State Farm Mut. Auto. Ins. Co.</u>, 387 S.E.2d 623, 624 (Ga. Ct. App. 1989). Similarly, in <u>Carter v. State Farm</u>, the Georgia Court of Appeals held that the automobile was being used for an auto business purpose when the mechanic drove the car to look for the customer, despite deviating from his route to eat a meal. <u>Carter v. State Farm Mut. Auto. Ins. Co.</u>, 223 S.E.2d 252, 254 (Ga. Ct. App. 1976).

The auto business exclusion (in the liability and medical payments sections) itself has a carveout: the exclusion "does not apply to you . . . when using a covered auto." Dkt. No. 44-3, pp. 4, 8. The second question: does this carveout to the exclusion apply? The undisputed answer: no. The carveout only applies when the insured (McCallister) is driving a covered auto, as opposed to a non-owned vehicle. Here, McCallister did

not own the Camaro, and it was not listed as a covered auto in the declarations page of the Policy. So this does not fall within the carveout to the auto business exclusion.

In conclusion, there is no genuine issue of material fact regarding whether McCallister was engaged in an auto business when the collision occurred. The auto business exclusion applies. Summary judgment in favor of Progressive is in order. Progressive is not obligated to insure the McCallisters under the Policy for their liability, medical payments, or collision coverage for losses arising from Mr. McCallister's collision with the Ford E-350 on March 2, 2016.

## CONCLUSION

Progressive's Motion for Summary Judgment is **GRANTED**. The Clerk of Court is **DIRECTED** to enter judgment accordingly and close the case.

**SO ORDERED**, this 2nd day of May, 2018.

HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA